[L. A. No. 71.   Department Two.—March 24, 1896.]

VENTURA COUNTY, APPELLANT, v. HENRY CLAY, COUNTY TREASURER, AND C. H. BRADLEY, RESPONDENTS.

COLLECTION OF LICENSE TAXES—PAYMENT TO TAX-COLLECTOR—POWER OF SUPERVISORS.—The board of supervisors of a county has power to impose license taxes for purposes of revenue, and to provide for their collection by suit or otherwise; and though it has no power to create the office of license tax-collector, it may authorize license taxes to be paid to the county tax-collector.

ID.—DUTY OF TAX-COLLECTOR—PERMISSIVE ORDINANCE.—Where the tax-collector is authorized to receive license taxes under a county ordinance, though its language is merely permissive, it is the official duty of the tax-collector to receive them.

ID.—RECEIVING LICENSE TAXES AN OFFICIAL FUNCTION—PRIVATE CONTRACT—POWER OF BOARD OF SUPERVISORS—INVALID CLAIM AGAINST COUNTY.—The act of receiving or collecting license taxes is an official function to be performed only by a county officer invested for that purpose with a part of the sovereign power of the state; and the board of supervisors has no power to make a contract with a private individual to collect license taxes for an agreed compensation, and such compensation cannot be enforced as a valid claim against the county.

ID.—STATUTORY POWER OF TAX-COLLECTOR—COUNTY GOVERNMENT ACT—POLITICAL CODE.—Under section 154 of the County Government Act which has never been repealed, and which requires the tax-collector to perform "such" duties as are prescribed by the Political Code, he is required to perform duties "of like kind" with those prescribed by the Political Code, and the duty to collect license taxes on business being "of like kind" with the duty to collect taxes upon property, though not identical with it, is included within the purview of that section of the County Government Act.

APPEAL from a judgment of the Superior Court of Ventura County.   B. T. WILLIAMS, Judge.

The facts are stated in the opinion.

*H. L. Poplin, District Attorney*, for Appellant.

The warrant was drawn without authority of law, and was not a legal charge against the county, as it was the duty of the tax-collector, under the ordinance, to receive and collect the license taxes, and his salary could not be increased by allowing the commission to Bradley, his duly appointed deputy.   (Stats. 1893, secs. 25, 154; 194,

CXII. CAL.—5

Const., art. IV, secs. 25. 32; art. XI, secs. 11, 12, 16; *Ex parte Mirande,* 73 Cal. 365; *Amador County* v. *Kennedy,* 70 Cal. 458; *Monterey County* v. *Abbott,* 77 Cal. 541; *El Dorado County* v. *Meiss,* 100 Cal. 273; *Welsh* v. *Bramlet,* 98 Cal. 219.)

*Blackstock & Ewing,* for Respondents.

The supervisors cannot, by ordinance or otherwise, impose a duty upon the tax-collector as such, that being the province of the legislature alone. (Const., art. XI, sec. 5; *Dougherty* v. *Austin,* 94 Cal. 601; *Welsh* v. *Bramlett,* 98 Cal. 219.) The legislature can only vest in the local authorities the power to assess and collect local taxes. (Const., art. XI, sec. 12; *People* v. *Martin,* 60 Cal. 153.) There is no implied duty resting upon a county officer. (*Modoc County* v. *Spencer,* 103 Cal. 498.) The tax-collector is only empowered to collect property taxes. (Stats. 1883, p. 219; Stats. 1893, p. 346; Pol. Code, tit. IX, pt. 3.) The agreement with Bradley did not create an office, but was a proper employment by the supervisors. (*In re Lawrence,* 69 Cal. 610.)

VANCLIEF, C.—Action to enjoin the treasurer of Ventura county from paying an auditor's warrant in favor of the defendant Bradley for two hundred and forty dollars claimed to be due Bradley for his services in collecting license taxes under an alleged contract with that county, and allowed by the board of supervisors as a valid claim. This action was brought by the district attorney, who contended that the alleged contract of Bradley with the county, and the allowance of Bradley's claim by the board of supervisors, were unauthorized by law; and, therefore, that this action was authorized by section 8 of the County Government Act.

The cause was tried by the court, whose findings and judgment were in favor of defendants; and plaintiff brings this appeal from the judgment on a bill of exceptions.

The material facts disclosed by the record are substantially as follows:

On November 7, 1890, the board of supervisors passed an ordinance (No. 48) amending section 2 of a prior ordinance (No. 39) so as to make it read as follows:

"SEC. 2. A license shall be granted to any person of good moral character who is a proper person to be in-trusted in the business to sell vinous, spirituous, distilled, malt, mixed, or other intoxicating liquors, at any specified place in this county, upon the petition of such person to the board of supervisors. Upon such petition being made by any applicant the board shall consider the same, and may hear evidence as to the character of the applicant, and as to his being a fit and proper person to be intrusted in such business, and, if the board be satisfied that such applicant is a person of good moral character, and a proper and worthy person to be intrusted in such business, such petition shall be granted, and the auditor of the county shall be directed to issue a license to such applicant for the period of one year, upon payment to the tax-collector of the county the sum of six hundred dollars for such license, in advance."

This ordinance was duly attested, certified, and published, so that it took effect on November 30, 1890, and is admitted by both parties to be a valid ordinance, though neither a copy, nor the substance of the ordinance (No. 39) of which it is an amendment, appears in the record.

From the first Monday in January, 1892, until the trial of this action, A. J. Bell was the duly elected and qualified tax-collector of Ventura county, whose salary was two thousand dollars per annum. On February 24, 1894, he appointed the defendant, Bradley, his "deputy tax and license collector" for said county; and on the same day Bradley qualified by taking the oath of office, and his appointment had not been revoked at the time this action was commenced.

As tax-collector, Bell received the liquor license taxes according to ordinance No. 48, from the time he took office (January, 1892) until about October 15, 1894, but thereafter refused to receive them for the alleged reason

that it was not his official duty to collect or receive license taxes.

On November 9, 1894, the board of supervisors, at the request of the tax-collector (Bell) and of Bradley's attorney, made and entered an order that Bradley be employed to collect the license taxes, and thereafter, on December 5, 1894, entered into and executed the following written agreement with Bradley:

"Agreement of employment made this December 5, 1894, between the county of Ventura, a body politic and corporate, the party of the first part, and C. H. Bradley of said county, the party of the second part, in pursuance of an order of the board of supervisors of said county made and entered on November 9, 1894, witnesseth:

"That said party of the first part does hereby hire and employ the party of the second part to collect for the party of the first part all liquor and other business license taxes due and to become due to the party of the first part under the ordinances thereof now in force or hereafter, during the continuance of this agreement, to be passed, for a compensation or commission, to the party of the second part, of ten per cent on all sums collected hereunder by him; and said party of the second part, in consideration of the premises and of such commission of ten per cent upon all sums actually collected by him thereunder, does hereby promise and agree to and with the party of the first part faithfully and diligently to collect all such license taxes and safely keep the same and regularly deposit the same at least once in each month with the treasurer of said county; and the commission of ten per cent, above provided, shall be in full payment and satisfaction of the party of the second part for all services rendered by him hereunder.

"And as part and parcel of this agreement the said party of the second part promises and agrees to file with the board of supervisors, on the first day of their meeting in each month, a statement showing all license taxes collected by him hereunder, all moneys therefrom de-

posited with the county treasurer, and all moneys, if any, remaining in his custody. Compensation of said party of the second part shall not be paid or otherwise retained or allowed, except upon order of the board of supervisors of said county after claim therefor has been regularly presented as in the case of other county claims.

"And it is further mutually understood and agreed that this agreement shall be and is hereby made terminable at the pleasure of the board of supervisors of said county, with or without notice to the party of the second part."

On February 4, 1895, Bradley presented to the board of supervisors his itemized claim for ten per cent on two thousand four hundred dollars, received by him as license taxes for which four liquor licenses had been issued, each for the term of one year. This claim was referred, by the board, to the district attorney for his opinion as to whether it was a legal charge against the county, and he reported to the board that it was not a legal charge against the county for any amount. Nevertheless the board allowed the claim and ordered it paid.

The appellant contends that the alleged contract of the county with Bradley, the order of the board of supervisors allowing Bradley's claim as a valid charge against the county, and the auditor's warrant for the payment of said claim, were unauthorized by law; and it is not denied that they were so, if it was an official duty of the tax-collector to receive the money required to be paid to him by ordinance No. 48, as a condition precedent to the issuance of a liquor license. Therefore, the whole controversy on this appeal may be determined by a decision of the question, whether or not it was an official duty of the tax-collector to receive the liquor license taxes imposed by the ordinance, No. 48.

It is not questioned, nor is it questionable, that the board of supervisors was authorized to impose such license taxes, " for the purposes of . . . . revenue . . . . and to provide for the collection of the same by suit or otherwise" (County Government Act, sec. 25, subd. 27;

Const., art. XI, secs. 11, 12; *People* v. *Martin*, 60 Cal. 153; *Ex parte Mirande*, 73 Cal. 365); and although it had no power to create the office of license tax-collector (*El Dorado County* v. *Meiss*, 100 Cal. 273; *County of Los Angeles* v. *Lopez*, 104 Cal. 257), it had power to order the liquor license taxes, to which the ordinance (No. 48) related, to be paid to a county officer having authority to *receive* them; since, in this case, the ordinance required nothing more of the tax-collector than that he should receive those taxes when voluntarily tendered by applicants for liquor licenses. By no possibility could those taxes become delinquent; and, therefore, the supervisors properly omitted to provide any mode, "by suit or otherwise," to enforce payment of them. If the tax-collector was authorized to receive those taxes when tendered, though only by language merely permissive, or even by implication, it was his official duty to receive them. "Where a public body or officer has been clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely, and not peremptory." (Mechem on Public Offices, sec. 593.) The remaining question, therefore, is, Do the statutes of this state authorize the tax-collector to receive the license taxes to which the ordinance (No. 48) relates?

It may be premised that the act of receiving or collecting license taxes of any kind for county revenue is an official function to be performed only by county officers invested for that purpose with a part of the sovereign power of the state, derived directly from the legislature (see dissenting opinion of Mr. Justice McKee, in *People* v. *Ferguson*, 65 Cal. 288, so far as adopted by this court in *County of El Dorado* v. *Meiss, supra;* also *Rowe* v. *County of Kern*, 72 Cal. 353, and Mechem on Public Offices, sec. 1), the legislature being prohibited by the constitution from delegating its power to create

a county office, or to prescribe or regulate the salary or compensation of any county officer.

From these premises it would seem to follow that the board of supervisors of a county has no power to create the office of tax-receiver or tax-collector, nor to fix or regulate the compensation of the incumbent of such office under any circumstances, even though the legislature should fail to create such an office; and this conclusion is not controverted by counsel for respondent. Yet they contend that the board of supervisors may, by contract, employ a person to perform the functions of tax-receiver, or tax-collector, for a specified consideration or compensation, to be paid by the county, in case the legislature fail to provide a county officer for that purpose. In what substantial respect does such employment differ from the creating of the office of tax-collector, and the fixing of the compensation of the incumbent thereof? I perceive only a difference in words expressing the same meaning. In each case the functionary represents and exercises the same sovereign power of the state. The same thing that is called an office in one case is called employment in the other. The functionary who in one case is called officer is called employee in the other. That which, in one case, is called salary, or fees of office, is called compensation of a servant in the other. It is unnecessary, however, farther to extend this line of argument, or to decide whether or not the supervisors of a county have power to supply delinquencies of the legislature in the matter of providing the necessary county officers, and prescribing their duties; since I think the legislature had created the office of tax-collector for each county in the state by section 4103 of the Political Code; and by section 4301 of the same code had declared that "the tax-collector must perform such duties as are prescribed in title IX, part III, of this code"; and the County Government Act of March 14, 1883, by section 57, had continued that office, and section 154 of the same act provides: "The tax-collector must perform

such duties as are prescribed in title IX, part III, of the Political Code," this section being a copy of section 4301 of the Political Code above quoted. Under these. sections of the Political Code and County Government Act the tax-collectors (*or ex officio* tax-collectors, where the office was consolidated with that of sheriff) had collected all kinds of license taxes during a period of more than twenty years immediately prior to the refusal of the tax-collector of Ventura county to receive the license taxes required to be paid to him by the ordinances of the supervisors of that county, without questioning their authority to do so; and even the present tax-collector of Ventura county did not discover his want of authority to receive such taxes until after he had received them during a period of nearly three years, when he and the board of supervisors were advised that neither he, nor any other county officer, was authorized to receive license taxes; and thereupon, being careful not to transgress the bounds of his authority, he requested the board of supervisors to employ his then deputy tax-collector, Bradley, to collect those taxes.

It is well settled that the legislature may define the duties of an officer by referring to another existing statute; and also that a subsequent repeal of the act so referred to does not affect or change the act referring to it. (*People* v. *Whipple,* 47 Cal. 592.)

But it is claimed by counsel for respondent that title IX, part III, of the Political Code, referred to by section 154 of the County Government Act as defining the duties of tax-collector, requires him to collect or receive only the taxes on property, and does not enjoin upon him the duty of collecting or receiving license taxes.

It is true that license taxes are not mentioned in title IX, part III, of the Political Code; yet the only duties of the tax-collector therein prescribed are those of receiving and collecting taxes and paying them into the treasury; and section 154 of the County Government Act provides that " the tax-collector must perform *such* duties"—not *those* duties—meaning duties " of that

kind," and " of like kind," though not necessarily iden-
tical. For definitions of the word " *such,*" see Web-
ster's Dictionary, Century Dictionary, and Anderson's
Law Dictionary. The word " such " relates to and
limits the word " *duties*" to *that kind* of duties enjoined
in title IX, part III, of the Political Code; but does not
qualify the word " *taxes,*" or restrict its application to
any particular kind of taxes, the word " taxes" not being
used in section 154 of the County Government Act.
The kind of duties enjoined upon the tax-collector by
title IX, part III, of the Political Code, is that of col-
lecting taxes on property; and surely the duty to collect
taxes on business (license taxes) is of a like kind,
though the taxes collected in the latter case are not the
identical taxes collected in the former.

In 1887 the legislature added a new section to the
County Government Act, numbered 110½ (Stats. 1887,
p. 208), as follows:

" It shall be the duty of the tax-collector, except where
it is by law otherwise expressly directed, to collect all
taxes *and licenses* levied by law, or imposed by ordi-
nance by the board of supervisors, in the manner and
subject to the terms of the law or ordinance providing
for the same."

This new section was expressly repealed by the legis-
lature of 1889 (Stats. 1889, p. 302), but section 154 of
the County Government Act has never been repealed
nor amended, and was re-enacted in the revised edition
of that act in 1891. (Stats. 1891, p. 330.)

Counsel for respondent contend that the enactment of
this new section indicates that the legislature under-
stood that section 154 of the act did not authorize the
tax-collector to collect license taxes; that the new section
was intended merely to supply the deficiency, and had
that effect; and that the repeal of the new section, in
1889, left the tax-collector without authority to collect
license taxes.

As to the reason why the new section was enacted,
counsel's theory, at first impression, seems plausible;

but if it was understood by the legislature of 1889, that section 154 of County Government Act did not authorize the tax-collector to collect license taxes, why was the new section repealed without enacting a substitute authorizing some officer to collect the license taxes? Is it to be presumed that the legislature intentionally omitted to provide for the collection of those taxes? The only rational answer to these questions would seem to be that the new section was considered superfluous because the tax-collector was authorized to collect those taxes by section 154, and that for this reason alone the new section was repealed.

Nor did the enactment of the new section repeal section 154 by implication; since it only purports to authorize the tax-collector to collect such taxes as he was not otherwise by law expressly directed to collect; and therefore could not have been intended as a substitute for, or revision of, any theretofore existing law authorizing the collection of taxes.

From the foregoing considerations it follows: 1. That section 154 of the County Government Act has never been repealed; 2. That said section authorizes the county tax-collector to receive and collect all license taxes required to be paid to him by a valid ordinance of the county board of supervisors; 3. That the employment of the defendant, Bradley, by the board of supervisors of Ventura county to collect the license taxes for that county is unauthorized by law, and is void; 4. That the claim of Bradley for his services in collecting license taxes under said employment was not a lawful charge against said county, and should not have been allowed by the board of supervisors; 5. That the judgment appealed from should be reversed, and the court below directed to enjoin the defendant treasurer of said county perpetually from paying the auditor's warrant in favor of defendant, Bradley, described in plaintiff's complaint, as prayed for by the plaintiff.

BRITT, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment appealed from is reversed, and the court below is directed, perpetually, to enjoin the treasurer of Ventura county, defendant herein, from paying the auditor's warrant in favor of the defendant, Bradley, described in plaintiff's complaint, as prayed for by plaintiff.

McFARLAND, J., HENSHAW, J., TEMPLE, J.